# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TROY WALKER | § | |
| | § | |
| V. | § | CASE NO. 4:12-cv-324 |
| | § | (Judge Mazzant) |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for disability insurance benefits and supplemental security income ("SSI"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be remanded.

## HISTORY OF THE CASE

Plaintiff originally filed for Title II disability insurance benefits on July 30, 2009, and for SSI under Title XVI on October 27, 2009 (TR 24, 95-98, 99-100). These applications were denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an administrative law judge ("ALJ") (TR 66-69, 86-87). After holding a hearing on September 28, 2010, the ALJ denied benefits on October 18, 2010 (TR 37-65, 24-32). Plaintiff requested Appeals Council review of the ALJ's decision, and on April 19, 2012, the Appeals Council denied Plaintiff's request for review (TR 1-7). Thus, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

Plaintiff was born on August 27, 1970, making him a 38-year-old male at the date of his onset date (TR 40). Plaintiff was classified as a "younger individual" under the Act. Plaintiff has a high school education (TR 40). Plaintiff has past work as an operating engineer and construction worker (TR 41-43, 121-127, 136-137, 139-143).

The adjudicated period for Plaintiff's Title II claim is from October 15, 2008, Plaintiff's alleged disability onset date, through October 18, 2010, the date of the ALJ's decision (TR 32, 99). The adjudicated period for Plaintiff's Title XVI claim is from October 27, 2009, the date that Plaintiff filed his application, through October 18, 2010, the date of the ALJ's decision (TR 32, 95-98).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

One medical expert, a vocational expert, and Plaintiff testified at the hearing before the ALJ (TR 37-65, 86-87).

After a discussion of the medical data regarding Plaintiff and hearing testimony, the ALJ made the prescribed sequential evaluation. The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2008, the alleged onset date (TR 26). The ALJ determined at step two of the sequential evaluation that Plaintiff suffered from a number of severe impairments including mild lumbar spondylosis, chronic low back pain, and hypertension (TR 26). At step three, the ALJ determined that none of these impairments, individually or taken as a group, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR 27). The ALJ determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work (TR 27). At step four, the ALJ determined that Plaintiff could not return to his past relevant work (TR 30). At

step five, the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, and found that he was not disabled (TR 31).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below. 20 C.F.R. § 404.1520(a)(4).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant

who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (2012). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (2012). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (2014). 20 C.F.R. § 404.1520(d) (2012). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (2012). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f) (2012); 42 U.S.C. § 1382(a).

## **ANALYSIS**

Plaintiff raises the following two issues in his appeal: (1) new and material evidence submitted to the Appeals Council diluted the record such that the ALJ's decision was not substantially supported; and (2) the ALJ's residual functional capacity finding is not supported by substantial evidence.

Plaintiff's medical records show a history of lumbosacral degenerative disc disease, lower extremity neuropathy, sleep disturbance, hypertension, chronic pain syndrome, anxiety, and depression. A February 2005 MRI of Plaintiff's lumbosacral spine showed a moderate to large disc bulge at L4-L5, which caused severe left neural foraminal narrowing, and a moderate bulge at L3-L4, which caused moderate to severe neural foraminal narrowing (TR 249). The interpreting physician opined that the L3-L4 bulge might touch the exiting nerve root (TR 247).

4

Plaintiff was treated for his lumbosacral impairments, chronic pain, anxiety, and neuropathy by Texas Neurology Associates from 2006 through 2010. In June 2006, Plaintiff reported low back pain, anxiety, stress, and poor sleep due to his pain (TR 227). At that time he was taking hydrocodone, flexeril, and xanax (TR 227). An MRI was ordered, and it showed degenerative changes in Plaintiff's lumbosacral spine, disc bulges at L3-L4, L4-L5, and L5-S1 (TR 229). The bulge at L3 was touching the exiting nerve root and was labeled as a "chronic" condition (TR 229). The interpreting physician thought that the other bulges might also touch the nerve roots (TR 229).

Treatment records from 2007 show that Plaintiff continued to suffer from low back pain, neuropathy, and sleep disturbance (TR 233). An MRI conducted in February 2007 showed similar results to the 2006 study (TR 223-24). The disc bulge at L3-L4 encroached on the exiting nerve root, and the broad bulge at L4-L5 effaced the neural exit foramina (TR 223). An EMG study was performed in May 2007 to help assess the nature of Plaintiff's low back pain and lower extremity numbness and tingling (TR 220). The study showed abnormal sensory results in both of Plaintiff's lower extremities and a permanently demyelinating sensorimotor neuropathy in Plaintiff's both lower limbs (TR 221-22).

In July 2007, Plaintiff was given trigger point injections in an attempt to ease his low back pain (TR 241). An examination prior to the administration of the injections showed "tremendous" amounts of pain when testing was administered to Plaintiff's lumbar paraspinal muscles (TR 241). At a follow-up exam after the injections, Plaintiff noted that his back pain had decreased (TR 218). However, Plaintiff required more injections in September 2007 (TR 237).

At a September 2009 exam at Texoma Neurology, Plaintiff reported severe low back pain (TR 214). Plaintiff was unable to work and was tearful and depressed (TR 214-215). The treatment staff described his pain as chronic (TR 214). Plaintiff was assessed with degenerative disc disease, muscle spasm, anxiety, sleep disturbance, and neuropathy (TR 215).

Plaintiff returned to Texas Neurology in January 2010 for his back pain (TR 209). He related that walking, sitting, and postural movements increased his pain (TR 209). His pain radiated to both hips, and he also experienced muscle spasms (TR 209). Plaintiff was unable to work or help around the house, and he had difficulty sleeping and affording his medication (TR 209). Plaintiff also experienced numbness and weakness in his lower extremities due to neuropathy (TR 209). He also experienced depression due to his chronic pain (TR 209). On examination, Plaintiff's motor strength was reduced and he had give-way gait difficulty due to pain (TR 210-211). Plaintiff's reflexes and range of motion were also decreased (TR 211). Plaintiff was diagnosed with left peripheral neuropathy, sleep difficulty, chronic pain syndrome, anxiety, depression, and hypertension (TR 211).

On January 14, 2010, Plaintiff underwent a consultative examination performed by Dr. Cecilier Chen (TR 201, 203-206). X-rays performed in conjunction with the examination showed disc space narrowing in several levels and degenerative changes in the lumbar spine (TR 201). Dr. Chen's examination showed a reduced range of motion in Plaintiff's spine and subjective diminished sensation in his left leg below the knee (TR 205). Dr. Chen assessed Plaintiff with low back pain, chronic degenerative spine changes, hypertension, and tobacco use (TR 206).

A non-examining state agency medical consultant issued a case assessment form on January 21, 2010, in which Plaintiff's physical impairments were found non-severe (TR 207). The consultant's finding was reconfirmed by another consultant on April 21, 2010 (TR 225).

On July 30, 2010, Plaintiff returned to Texoma Neurology for worsening pain, numbness, paresthesia, and weakness (TR 242). Plaintiff reported that he could not lift, stand, or sit without pain and could not care for himself (TR 242). Abnormalities and limited ranges of motion were noted in his cervical and lumbosacral spine (TR 243). Plaintiff's posture was bent and weak-appearing (TR 243). Plaintiff was instructed to avoid lifting or moving objects weighing over one pound, and treatment staff noted that he would need assistance at home and was unable to work (TR 243).

On September 14, 2010, a Nurse Practitioner from Texoma Neurology, Bonnie Boyd-Smithers ("Smithers"), completed a clinical assessment of Plaintiff's functional limitations (TR 251-253). Smithers opined that Plaintiff could lift and carry less than one pound on an occasional basis (TR 253). Plaintiff's postural movements were also restricted to an occasional basis (TR 253). Smithers also stated that Plaintiff could sit, stand, and walk less than two hours per day and needed complete freedom to rest to relieve his pain and fatigue (TR 251-252). Smithers also opined that Plaintiff's moderate to severe pain would frequently impact the attention and concentration needed to perform even simple tasks (TR 252-523). Smithers concluded that Plaintiff was unable to work (TR 253).

At the administrative hearing, Plaintiff testified that he was laid off from his last job in part because he was missing too many days due to back pain (TR 44-45). Plaintiff related that he was not a candidate for spinal surgery because of the risk of paralysis involved (TR

7

45). He also stated that he could not walk a city block or climb a flight of stairs due to his back and leg pain (TR 46, 51). He testified that he had problems bathing and dressing, and he was sometimes able to do light housework but no yard work (TR 47, 53). Plaintiff stated that he could sit or stand less than two hours at a time and had to lie down four hours a day due to pain (TR 48). Plaintiff also testified that his sleep was disturbed by his pain (TR 51).

In his first issue, Plaintiff asserts that the decision should be reversed and remanded so that the ALJ can properly account for Plaintiff's treating physician's opinion. Plaintiff asserts that new and material evidence submitted to the Appeals Council in conjunction with a Plaintiff's request for review is part of the record upon which Commissioner's administrative decision is based. Plaintiff argues that the new and material evidence dilutes the record such that Commissioner's decision is not supported, requiring remand.

The opinion from Plaintiff's treating physician at Texoma Neruology, Dr. Jose Matus, was submitted to the Appeals Council with Plaintiff's request for review (TR 181, Appx. 1-4). Dr. Matus opined that, since October 15, 2008, Plaintiff had been able to lift and carry ten pounds or less on a less-than-occasional basis (Appx. 2). Dr. Matus opined that Plaintiff could not perform postural movements on even an occasional basis, and he could stand, walk, or sit for six hours or less a day (Appx. 2-3). The doctor stated that Walker needed complete freedom to rest frequently without restriction due to his pain (Appx. 3). Dr. Matus also characterized Plaintiff's pain as "severe" and opined that it would continuously affect the concentration and attention needed to perform even simple work (Appx. 4).

The Appeals Council found as follows:

> We looked at the medical records from Jose Matus, M.D., Ken Anderson, M.D, and Texoma Neurology Associates, that you submitted with the request for review and brief. The Administrative Law Judge decided your case

through October 18, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 18, 2010.

If you want us to consider whether you were disabled after October 18, 2010, you need to apply again. We are returning the evidence to you to use in your new claim (TR 2).

When a district court reviews a disability claim, it must consider the entire administrative record, which includes any action the Appeals Council has taken. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). When the Appeals Council receives a request for review it "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.967. When the Appeals Council declines to grant a request for review, the ALJ's decision becomes the final decision of the Commissioner. *Higginbotham*, 405 F.3d at 337. "The Appeals Council should grant review 'if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Henderson v. Astrue*, No. 3:10-CV-0589-D, 2011 WL 540286, at *5 (N.D. Tex Feb. 15, 2011) (citing 20 C.F.R. § 404.970(b)). Regardless of the outcome at the Appeals Council, claimants are permitted to send additional evidence in connection with the request for review as long as it is relevant to the time periods where disability is alleged. *See* 20 C.F.R. § 404.970(b). New evidence received at the Appeals Council must be considered with a request for review. *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex 2003); *see also Carry*, 750 F.2d at 486. When evaluating that evidence, the Appeals Council must follow the same rules that the ALJ follows. 20 C.F.R. § 404.1527(e)(3). New evidence is "material" if: (1) the evidence "relates to the time period for which the disability benefits were denied," and (2)

9

"there is a reasonable probability that [the] new evidence would change the outcome of the [Commissioner's] decision." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

The United States Court of Appeals for the Fifth Circuit cautions against remanding cases based on new evidence presented to the Appeals Council. *See Jones v. Astrue*, 228 F. App'x 403, 406-07 (5th Cir. 2007) (citing *Higginbotham*, 405 F.3d at 334 ("final decision" of the Commissioner includes evidence presented for the first time to the Appeals Council)).

Plaintiff submitted an opinion from his treating physician from Dr. Jose Matus, regarding the functional limitations caused by his impairments (TR 181, Appx. 1-4). The Appeals Council examined the opinion from Dr. Matus, but found that the information was "about a later time" and was not material to Plaintiff's claim (TR 2). The Appeals Council concluded that it did not affect the ALJ's decision about whether Plaintiff was disabled on or before October 18, 2010, and returned the evidence to Plaintiff for use in a subsequent claim.

Plaintiff argues that Dr. Matus's opinions were material to his claim and should be considered part of the record upon which Commissioner's final decision was based. Plaintiff alleges that while Dr. Matus's opinions were dated on November 14, 2011, more than a year after the ALJ's decision, the doctor specifically stated that the limitations he assessed had been present since the date Plaintiff claimed he became disabled, October 15, 2008. Plaintiff further alleges that Dr. Matus treated Plaintiff at Texoma Neurology during the time relevant to his claims for benefits. Plaintiff then alleges that the new and material opinions from Dr. Matus contradicted several of the findings upon which the ALJ based the disability determination.

The Commissioner asserts that the new evidence consists of a residual functional capacity assessment that Dr. Matus completed on November 14, 2011, which indicates that

Plaintiff could perform work activities that were less than sedentary work. The Commissioner also points out that Plaintiff admits that Dr. Matus completed this form more than one year after the adjudicated period had already ended, but argues that Dr. Matus had treated Plaintiff during the time period relevant to his claim for benefits. The Commissioner then argues that "nowhere in Dr. Matus' November 14, 2011 [residual functional capacity] form did he indicate that he was providing an [residual functional capacity] opinion of Plaintiff's abilities for the period before the ALJ's October 18, 2010 decision." The Commissioner then argues that Plaintiff did not meet the time requirement in the first prong of the materiality test, because he failed to show that Dr. Matus's residual functional capacity form related to the time period adjudicated in this case. The Commissioner then argues that Plaintiff also has not shown that Dr. Matus's residual functional capacity form met the second prong of the materiality test, that it had a reasonable probability of changing the ALJ's decision.

Plaintiff correctly points out that the Social Security Regulations do not require that evidence be dated before the ALJ's decision to be material, but that it relate to the period on or before the ALJ's decision. 20 C.F.R. § 416.1476(b)(1). Here, Dr. Matus clearly stated that his opinions applied to the time period relevant to Plaintiff's claims, therefore the opinions were material and should be considered as part of the record. The fact that Dr. Matus's treating opinion was completed on November 14, 2011, more than a year after the ALJ's decision, is immaterial in this case. Dr. Matus explicitly stated that his November 14, 2011 opinions reflected Plaintiff's limitations prior to the ALJ's 2010 decision. On the first page of Dr. Matus's opinion, he indicated that his opinions were based on his assessment of Plaintiff' s impairments from October 15, 2008, to the date he signed the opinion, November

14, 2011.  Thus, the Appeals Council erred in not considering this evidence.  Moreover, Dr. Matus's functional assessment is the only such assessment from a treating doctor in the record.   As the only assessment of Plaintiff's functional limitations provided by a treating specialist, the opinions from Dr. Matus diluted the record upon which Commissioner's decision was based such that it is not substantially supported.

Because the Appeals Council improperly rejected Dr. Matus's opinion as immaterial, it did not perform the analysis required when evaluating treating source opinions.  The weight given to Dr. Matus's opinions must be determined upon remand.  The Court cannot reweigh the evidence, try the issue *de novo*, or substitute its judgment on the ultimate issue of disability for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  The Court finds that remand is necessary so that Dr. Matus's opinions may be weighed under the proper legal standards. The ALJ and Appeals Council are entitled to determine the credibility of medical sources and weigh their opinions accordingly. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  Moreover, the new and material evidence from Dr. Matus directly contradicted several of the findings upon which the ALJ based the disability determination.

In light of the new and material evidence submitted to the Appeals Council, Commissioner's final decision was not substantially supported.   Remand for further consideration of the new evidence by either the Appeals Council or the ALJ is warranted.

Pursuant to the foregoing, it is **ORDERED** that the decision of the Administrative Law Judge be **REMANDED**.

**SIGNED this 27th day of March, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE